# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CYNTHIA H.,[1]                          :    Case No. 3:22-cv-00005
                                        :
      Plaintiff,                       :    Magistrate Judge Caroline H. Gentry
                                        :    (by full consent of the parties)
vs.                                     :
                                        :
COMMISSIONER OF THE SOCIAL              :
SECURITY ADMINISTRATION,                :
                                        :
      Defendant.                       :

---

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in June 2019.

Plaintiff's claim was denied initially and upon reconsideration. After a hearing at

Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not

eligible for benefits because she was not under a "disability" as defined in the Social

Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff

subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

Court to affirm the non-disability decision. For the reasons set forth below, this Court

AFFIRMS the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.      BACKGROUND

Plaintiff asserts that she has been under a disability since December 1, 2015. At

that time, she was fifty years old. Accordingly, Plaintiff was considered a "person closely

approaching advanced age" under Social Security Regulations. *See* 20 C.F.R.

§ 404.1563(d). Prior to the date last insured (DLI) of December 31, 2020, she turned age

fifty-five and changed age categories to a "person of advanced age." *See* 20 C.F.R.

§ 404.1563(e). Plaintiff has a "high school education and above." *See* 20 C.F.R.

§ 404.1564(b)(4).

The evidence in the Administrative Record ("AR," ECF No. 8) is summarized in

the ALJ's decision (*id.*, PageID 56-67), Plaintiff's Statement of Errors ("SE," ECF No.

9), the Commissioner's Memorandum in Opposition ("Mem. in Opp.," ECF No. 10), and

Plaintiff's Reply Memorandum ("Reply," ECF No. 11). Rather than repeat these

summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.     STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to

individuals who are under a "disability," among other eligibility requirements. *Bowen v.

City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a).

The term "disability" means "the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months." 20 C.F.R.

§ 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.   FACTS

### A.     The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

> Step 1:     Plaintiff did not engage in substantial gainful activity between the alleged onset date of December 1, 2015 to the DLI of December 31, 2020.

> Step 2:     She had the severe impairments of "cervical disc disorder, degenerative disc disease, bilateral carpal tunnel syndrome, lateral epicondylitis, bilateral tennis elbow, osteoarthritis bilateral shoulders, chronic disorder at bursar of shoulder region; arthritis in L wrist, and bulging discs."

4

Step 3:      She did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:      Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of light work as defined in 20 CFR 404.1567(b), subject to the following limitations: "frequent pushing and pulling bilaterally; never climb LRS; frequently climb ramps and stairs; frequently kneel; occasionally stoop; frequently reach overhead bilaterally; frequently handle bilaterally; frequently finger bilaterally; frequently feel bilaterally; and avoid hazardous machinery and unprotected heights."

Through the DLI, she was able to perform her past relevant work as a project manager, both as actually and generally performed.

Step 5:      In addition to past relevant work, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed.

(AR, ECF No. 8-2, PageID 58-66.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and is not entitled to benefits. (*Id.*, PageID 66-67.)

## B.      State Agency Medical Consultants

State agency medical consultant Abraham Mikalov, M.D. reviewed the record and completed a physical RFC assessment in November 2019. (AR, ECF No. 8-3, PageID 101-03.) Dr. Mikalov opined that Plaintiff was limited to light exertion, subject to the following limitations: stand and/or walk for a total of four hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally stoop; frequently kneel, crouch, crawl, and climb ramps or stairs; frequently reach overhead, handle, and finger

bilaterally; and avoid even moderate exposure to hazards, including no heavy machinery or unprotected heights. (*Id.*) Elaine Lewis, M.D. reviewed the updated record at the reconsideration level in April 2020. (*Id.*, PageID 112-14.) Dr. Lewis essentially affirmed Dr. Mikalov's assessment for light exertion, except she found that Plaintiff was able to stand and/or walk for six hours in an eight-hour workday. (*Id.*, PageID 112.) She adopted Dr. Mikalov's postural and manipulative limitations but also limited Plaintiff to frequent feeling, pushing, and pulling with the upper extremities. (*Id.*, PageID 112-13.) Dr. Lewis additionally opined that Plaintiff needed to avoid concentrated exposure to vibration and all exposure to hazards. (*Id.*, PageID 113.)

The ALJ concluded that the State agency medical consultants' findings were persuasive. (AR, ECF No. 8-2, PageID 65.) The ALJ reasoned:

> . . . [D]ue to her history of carpal tunnel surgery and her continued subjective complaints, as well as to adequately account for any limitation that might derive from her neck pain, it has been determined that [Plaintiff] retains the functional capacity to frequently push and pull, overhead reach, handle, finger, and feel with the bilateral upper extremities as found by the Department of Disability Determination reviewing consultants. Such a finding is a direct adoption of the reviewing consultants from the reconsideration level. . . . This opinion evidence is found to be well supported considering the discussion above and generally consistent with the opinions and findings of Dr. Kennington. After considering the medical specialties, Social Security disability programs expertise and extensive experience evaluating Social Security disability cases of these reviewers, the undersigned finds their opinions to be persuasive and has essentially adopted their findings herein.

(*Id.* at PageID 63-65.)

### C.     Consultative Physician Rohn Kennington, M.D.

Rohn Kennington, M.D. performed a consultative physical examination in

September 2019. (AR, ECF No. 8-7, PageID 615-21.) According to Dr. Kennington,

Plaintiff's clinical signs and reported symptoms supported diagnoses of multilevel and

moderately severe cervical degenerative disc disease, lumbar degenerative disc disease,

bilateral carpal tunnel syndrome, osteoarthritis, and nicotine addiction. (*Id.*, PageID 617.)

Dr. Kennington concluded that Plaintiff was "incapable of any moderate or heavy lifting,

carrying, pushing, or pulling" but could perform light-level lifting, carrying, pushing, and

pulling. (*Id.*) He opined that Plaintiff's abilities for sitting, hearing, speaking, and

traveling were unaffected. (*Id.*) With regard to standing and walking, Dr. Kennington

opined that such activities "would need to be limited to periods of time, no more than

[one] hour at a time, with adequate periods allowed for rest and change position

considering her chronic lower back and neck pain." (*Id.*) Dr. Kennington additionally

opined: "Handling objects would need to be limited to nonrepetitive use in light of her

bilateral carpal tunnel syndrome." (*Id.*)

The ALJ found that Dr. Kennington's opinion was "only partially persuasive."

(AR, ECF No. 8-2, PageID 62.) The ALJ explained: "The functional limitations

referenced by Dr. Kennington are somewhat vague. However, the undersigned finds that

limiting the claimant to a reduced range of light work is adequately supported by the

substantial weight of the evidence as well as the objective evidence from Dr.

Kennington's evaluation." (*Id.*) The ALJ further reasoned that Dr. Kennington's

limitation to non-repetitive handling bilaterally "is not a specific vocationally relevant

functional limitation nor does it adequately address all of the claimant's limitations associated with her upper extremity impairments." (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred by: 1) misapplying the Medical-Vocational Grids; and 2) wrongly evaluating Plaintiff's symptom severity and the medical source opinions and finding that Plaintiff is capable of "frequent" use of her bilateral hands and upper extremities. (SE, ECF No. 9, PageID 722, 726-27.) Plaintiff also challenges the ALJ's Step Four finding. (Reply, ECF No. 11, PageID 753.) These contentions are not well-taken. For the reasons discussed below, the Court concludes that the ALJ's RFC, analysis of Plaintiff's symptom severity, and analysis of the medical opinion evidence is supported by substantial evidence. The Court further concludes that the ALJ's Step Four finding is supported by substantial evidence. Finally, although the ALJ erred at Step Five, the error is harmless. Therefore, the ALJ's decision must be affirmed.

### A.    The ALJ's RFC Is Supported By Substantial Evidence

A claimant's residual functional capacity ("RFC") is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 416.946(c). The ALJ must base the RFC on all relevant evidence in the record. 20 C.F.R. § 416.945(a)(1). This includes objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5). An ALJ may also rely on the testimony of a vocational expert. 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e). "Substantial evidence may be produced through reliance on the testimony of

8

a VE in response to a 'hypothetical' question, but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Plaintiff asserts that the ALJ's limitations for frequent use of the bilateral hands and upper extremities are not supported by substantial evidence, and contends that the RFC should have included more restrictive upper extremity limitations. (SE, ECF No. 9, PageID 727-31.) Plaintiff further argues that she could not perform any of the jobs that the ALJ identified. These contentions are not well-taken.

Plaintiff recites many of her subjective complaints and testimony—and she identifies several diagnoses, objective findings, and medical opinions—to support her assertions. (SE, ECF No. 9, PageID 727-31; Plaintiff's Reply, ECF No. 11, PageID 753.) But the substantial evidence standard precludes this Court from weighing the evidence and deciding whether the preponderance of the evidence supports a different conclusion. *Biestek*, 139 S. Ct. at 1154 (2019). Instead, this Court may only determine whether the ALJ's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

The Court concludes that the ALJ's RFC assessment—including his conclusion that Plaintiff was limited to frequent bilateral pushing, pulling, overhead reaching, handling, feeling, and fingering—is supported by substantial evidence. In his discussion of the objective evidence and medical opinion evidence, the ALJ acknowledged Plaintiff's subjective complaints about her upper extremity issues. (AR, ECF No. 8-2, PageID 62-64.) He acknowledged Plaintiff's complaints to some medical providers that

9

she experienced neck pain that radiates into her upper extremities. (*Id.*, PageID 62.) The ALJ also noted Plaintiff's complaints that she experienced numbness, tingling, weakness, and heaviness in her arms, loss of control of her arms, bilateral wrist pain and swelling, difficulty grasping things, and stiffness and dexterity issues. (*Id.*)

The ALJ then discussed the medical records that documented Plaintiff's upper extremity conditions. (AR, ECF No. 8-2, PageID 62-64.) The ALJ recognized that cervical spine MRI reports in December 2016 and October 2019 showed advanced degenerative disc disease, spondylosis, facet arthropathy at multiple levels with foraminal stenoses, and annulus bulging at multiple levels. (*Id.*, PageID 63.) The ALJ also acknowledged that an October 2019 lumbar spine MRI showed moderate spinal stenosis at the L3-4 level secondary to a concentric bulging disc, ligamentous hypertrophy, and facet arthropathy, as well as anterolisthesis of L3 on L4 with no spondylolysis and a central disc herniation indenting the anterior thecal sac at the L4-5 level. (*Id.*)

The ALJ also summarized the other objective evidence related to Plaintiff's upper extremity complaints. (AR, ECF No. 8-2, PageID 62-64.) The ALJ explained that some examinations showed diminished range of motion of the cervical spine, cervical spine tenderness to palpation, bony tenderness of the left wrist but with no swelling, positive Phalen and Tinel's signs bilaterally, and decreased sensation in the fingertips. (*Id.*, PageID 62-63.) The ALJ compared this to other examination findings that included normal range of motion of the bilateral hands, fingers, wrists, elbows, and shoulders, as well as no abnormalities of the right wrist, normal fine motor coordination, only slightly decreased (4/5+) grip strength, and normal strength in all other major muscle groups. (*Id.*)

Additionally, the ALJ explained that Plaintiff responded well to two rounds of physical therapy. (AR, ECF No. 8-2, PageID 64.) This finding is consistent with the physical therapy treatment notes. Plaintiff initially began physical therapy in April 2017, and was discharged in August 2017 after reporting that she felt "about 80-85% better." (*Id.*, ECF No. 8-7, PageID 329-83.) Plaintiff also said that needling had "helped [her] out a lot." (*Id.*, PageID 329.) Significantly, Plaintiff reported a pain score at that time of only a two out of ten (ten being the worst pain), and she reported functional deficits only with gardening and lifting or carrying heavy objects. (*Id.*) Her physical therapist reported that Plaintiff had "progressed very well" and cited to improved posture, decreased pain levels, and improved tolerance to activities of daily living. (*Id.*, PageID 331-32.)

Plaintiff began a second course of physical therapy in December 2019. (AR, ECF No. 8-2, PageID 639.) Plaintiff complained that she frequently dropped things but only intermittently lost "all function" in her hands. (*Id.*) Subsequent notes indicated that Plaintiff tolerated treatment well and generally reported that her overall pain level was decreasing. (*Id.*, PageID 646-654.) Although Plaintiff reported some continued tightness, pain, and hand numbness during a session in January 2020, she reported a pain level of only a three out of ten. (*Id.*, PageID 650.) Plaintiff's physical therapist noted that Plaintiff continued to "make good progress overall with strength and flexibility." (*Id.*)

Plaintiff was discharged from physical therapy in March 2020. (AR, ECF No. 8-2, PageID 702.) At that time, Plaintiff reported some continued difficulty with numbness, tingling, and grasping, but stated that her symptoms had decreased overall. Plaintiff's

11

physical therapist reported that Plaintiff "made good progress overall" and documented improved strength and range of motion. (*Id.*)

The ALJ found that on balance, the evidence did not support Plaintiff's allegations of symptom severity and that Plaintiff retained the functional capacity to frequently push, pull, reach overhead, handle, finger, and feel bilaterally. (AR, ECF No. 8-2, PageID 63.) The Court concludes that the ALJ's findings are supported by substantial evidence.

The Court also concludes that the ALJ did not err in his analysis of the medical opinion evidence. Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "*most important*" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[2] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Plaintiff first challenges the ALJ's analysis of the State agency medical consultants' findings. (SE, ECF No. 9, PageID 729-30.) Plaintiff argues that the consultants' conclusions that Plaintiff could frequently use her bilaterally upper extremities were not well-supported by the objective medical evidence. (*Id.*, PageID 730-31). Therefore, because the ALJ adopted these conclusions, Plaintiff contends that the RFC is unsupported by substantial evidence. (*Id.*)

Plaintiff's arguments are not well-taken. The Court finds that the ALJ complied with applicable regulations when he found that the State agency medical consultants' findings were persuasive, and his RFC is supported by substantial evidence.

The ALJ concluded that the consultants' findings were "well supported considering the discussion above and generally consistent with the opinions and

---

[2] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

"[f]indings of Dr. Kennington." (AR, ECF No. 8-2, PageID 64-65.) The ALJ's conclusion is supported by the consultants' explanations of the evidence that they reviewed (*see id*., ECF No. 8-3, PageID 94-101) and the ALJ's discussion of the medical evidence. The ALJ also recognized the "medical specialties, Social Security disability programs expertise, and extensive experience evaluating Social Security disability cases" of the consultants (*id*., ECF No. 8-2, PageID 65), which is an appropriate factor to consider under 20 C.F.R. § 404.1520c(c)(4). The ALJ balanced the evidence and found that the consultants' findings were persuasive. Thus, the ALJ addressed the supportability and consistency of the consultants' findings as required by 20 C.F.R. § 404.1520c(b)(2), (c)(1), and (c)(2), and his findings are supported by substantial evidence.

Plaintiff challenges the initial consultant's conclusion that Plaintiff's statements regarding her symptoms were "[f]ully [c]onsistent" with the total medical and non-medical evidence in the file. (SE, ECF No. 9, PageID 730, citing AR, ECF No. 8-3, PageID 100.) Plaintiff argues that Dr. Mikalov should have instead found that Plaintiff was disabled, or at least that she would be unable to engage in frequent use of the upper extremities. (SE, ECF No. 9, PageID 730.) But Dr. Mikalov's conclusion was consistent with the evidence in the record—both the objective medical evidence and Plaintiff's subjective complaints—that he reviewed at the time of his assessment.

For example, in her initial Disability Report, Plaintiff reported several physical conditions but did not allege any specific functional deficits. (AR, ECF No. 8-6, PageID 258-66.) Further, although Plaintiff complained of "numbness, weakness, and loss of use" of the bilateral wrists, she did not indicate the frequency of these symptoms. (*Id.*,

14

PageID 265.) During a December 2016 medical visit, Plaintiff complained of neck weakness but reported only intermittent numbness and tingling in the bilateral hands. (*Id*., ECF No. 8-7, PageID 391.) A physical examination was essentially normal and showed intact sensation and full strength in the upper extremities. (*Id*.) In January 2017, Plaintiff reported only occasional numbness and tingling in the shoulders, and said that her left shoulder range of motion improved with stretching and flexibility exercises. (*Id.*, PageID 388.) A physical examination showed no focal motor or sensory deficits. (*Id.*) Although Plaintiff complained of severe bilateral wrist pain during an orthopedic evaluation in August 2019, Amie Beals, P.A.-C. noted that Plaintiff's braces were "significantly worn out." (*Id.*, PageID 608-10). Plaintiff said that recent de Quervian's injections were "still working well for her" and that her hands were currently "doing well." (*Id.*, PageID 610). A physical examination was again normal and showed normal range of motion, muscle strength, tone, and stability in the bilateral wrists and hands. (*Id*., PageID 609.)

During the September 2019 consultative physical examination, Plaintiff complained of chronic neck and back pain but reported only "intermittent" radiation of pain into the extremities. (AR, ECF No. 8-7, PageID 615.) Dr. Kennington's report does not show that Plaintiff made any specific complaints related to the use of her upper extremities. (*Id.*) Upon physical examination, Dr. Kennington documented tenderness to palpation and decreased range of motion of the cervical and lumbar spine regions, tenderness over the volar aspect of both wrists, and positive Tinel's and Phalen signs at the wrists. (*Id.*, PageID 615.) But he noted only some decreased sensation in the tips of the fingers and only slightly decreased (4/5+) grip strength bilaterally. (*Id.*, PageID 616-

15

21). Dr. Kennington otherwise documented full strength in the other major muscle groups, normal range of motion of the upper extremities, and normal grasp, manipulation, pinch, and fine coordination abilities bilaterally. (*Id.*) During a visit with orthopedist Dr. Tyger in November 2019, Plaintiff reported worsening of her arm numbness, tingling, weakness, and heaviness, but only "over the past several weeks." (*Id.*, PageID 629.) Dr. Tyger reviewed the cervical and lumbar imaging discussed above and recommended physical therapy and lumbar epidural steroid injections. (*Id.*, PageID 613, 629.)

Dr. Mikalov included these records in the list of evidence received at the time of his assessment and his summary of the medical evidence. (AR, ECF No. 8-3, PageID 95-101.) All of this evidence supports Dr. Mikalov's assessment and suggested limitations for frequent overhead reaching, handling, and fingering bilaterally. Moreover, the ALJ explained that he adopted additional upper extremity limitations—for frequent pushing, pulling, and feeling with the upper extremities—to account for the weight of the evidence through the DLI. (*Id.*, ECF No. 8-2, PageID 63.) The ALJ's consideration of the State agency medical consultants' findings is therefore supported by substantial evidence.

Plaintiff also argues that the ALJ erred by finding that Dr. Kennington's opinion regarding "non-repetitive use" was "not a specific vocationally relevant functional limitation" and by limiting Plaintiff to frequent use of the bilateral upper extremities in the RFC to account for Dr. Kennington's opinion. (SE, ECF No. 9, PageID 728; Reply, ECF No. 11, PageID 753.) According to Plaintiff, ". . . surely 'non-repetitive use' is not consistent with 'frequent use.'" (SE, ECF No. 9, PageID 728.) This argument is not well-

16

taken. The ALJ complied with applicable regulations when he found Dr. Kennington's opinion to be partially persuasive, and his findings are supported by substantial evidence.

The ALJ correctly noted that Dr. Kennington's limitation for "non-repetitive use" of the hands is not a "specifically vocationally relevant functional limitation." (AR, ECF No. 8-2, PageID 62.) Social Security Ruling (SSR) 83-10 provides definitions of terms and concepts that are frequently used in evaluating disability. [3] SSR 83-10, 1983 WL 31251 (January 1, 1983). The SSR defines "frequent" as "occurring from one-third to two-thirds of the time." 1983 WL 31251, at *6. "Occasional" is defined as occurring "from very little up to one-third of the time") (1983 WL 31251, at *5). But the SSR does not define "non-repetitive." The term is also not defined in the Dictionary of Occupational Titles (DOT), Social Security regulations, SSRs, or HALLEX. Nor did Dr. Kennington define "non-repetitive" in his report. (AR, ECF No. 8-7, PageID 615-17.)

Therefore, the ALJ weighed the evidence to find that Plaintiff was limited to frequent use of the upper extremities. The ALJ supported his conclusions with a detailed analysis of the evidence relating to Plaintiff's upper extremity abilities:

> As mentioned by Dr. Kennington [Plaintiff] is remarked within the record to have been diagnosed with bilateral carpal tunnel syndrome. Additionally, [Plaintiff] has cervical radiculopathy and degenerative changes, which affect the functionality of her upper extremities (Exhibits 1F at 68; 13F). [Plaintiff] is remarked to complain of neck pain that radiates into her upper extremities (Exhibits 6F; 13F). She is also noted to complain of numbness, tingling, weakness, and heaviness in her arms as well as loss of control of arm, bilateral wrist pain and swelling, difficulty grasping things at times, stiffness and dexterity issues (Exhibits 1F; 6F at 8; 7F; 12F; 13F at 2). Examination revealed bony tenderness, normal range of motion, no

---

[3] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

swelling of the left wrist. The right was normal (Exhibit 1F at 5). During the evaluation with Dr. [Kennington], [Plaintiff] demonstrated diminished range of motion of the cervical spine and normal range of motion of the bilateral hands, fingers, wrists, elbows, and shoulders. There were also positive Phalen and Tinel's signs present bilaterally, there was some decreased sensation to light touch and pinprick in the tips of the fingers in the median nerve distribution bilaterally, and her fine motor coordination was deemed to be grossly normal. [Plaintiff] was also remarked to exhibit normal strength in all major muscle groups and to have grip strength that was largely normal (4/5+) bilaterally (Exhibit 5F). The findings of Dr. Kennington are consistent with the other examination findings of record. According to the evidence of record [Plaintiff] is remarked to have osteoarthritis of the wrists as well (Exhibits 1F).

(AR, ECF No. 8-2, PageID 62-63.)

The ALJ's conclusions are supported by the medical evidence discussed in his decision. The ALJ also complied with the requirements of 20 C.F.R. § 404.1520c(b)(2), (c)(1), and (c)(2) because he discussed the supportability of Dr. Kennington's opinion with his examination findings, as well as the consistency of Dr. Kennington's opinion with the other evidence of record.

Moreover, even if the ALJ had limited Plaintiff to occasional—instead of frequent—use of the upper extremities to account for Dr. Kennington's opinion for "non-repetitive use," this would not have changed the outcome of the ALJ's decision. As discussed below, the vocational expert classified Plaintiff's past relevant work as a project manager under DOT code 189.117-030. (AR, ECF No. 8-2, PageID 88.) According to the DOT, the project manager job as it is typically performed requires only occasional reaching, handling, fingering, and feeling bilaterally. DICOT 189.117-030, 1991 WL 671489 (Fourth Edition, Revised 1991). Therefore, even if the ALJ had included a more restrictive limitation in the RFC to only occasional use of the bilateral

18

upper extremities, Plaintiff would still have been able to perform the project manager job as it is generally performed in the national economy.

Finally, Plaintiff argues that her "strong work history should weigh in favor of giving weight to her symptom severity complaints." (SE, ECF No. 9, PageID 731.) This argument essentially challenges the ALJ's assessment of Plaintiff's credibility.[4] This Court must give great weight and deference to an ALJ's credibility assessment. *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 801 (6th Cir. 2004). An ALJ's credibility findings "are virtually unchallengeable" absent compelling reasons. *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. App'x 508, 511 (6th Cir. 2013). The Sixth Circuit has considered the argument raised by Plaintiff and has held that ALJs are "***not*** required to explicitly discuss [a claimant's] work history when assessing his credibility." *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) (emphasis added). Thus, Plaintiff's challenge to the ALJ's credibility assessment is unpersuasive.

### B.  The ALJ's Step Four Finding Is Supported by Substantial Evidence

The regulations permit an ALJ to use vocational expert testimony at Step Four to determine whether a claimant can perform her past relevant work, considering her RFC. 20 C.F.R. § 404.1560(b)(2); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). When formulating a hypothetical question for the vocational expert, the ALJ is required to incorporate "only those limitations that he accepts as credible."

---

[4] The current term used for evaluating subjective complaints is "consistency" instead of "credibility." *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (SSR 16-3p, 2017 WL 5180304 (Mar. 16, 2016, revised and republished Oct. 25, 2017) removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character.").

*Griffeth*, 217 F. App'x at 429 (citing *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). "[A]n ALJ is not required to accept a claimant's subjective complaints, and 'can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate.'" *Id.* (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). The ALJ may rely on the vocational expert's testimony that "such a hypothetical person can perform a certain job." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002).

Although not assigned as a specific error, Plaintiff challenges the ALJ's Step Four finding because the project manager job "obviously" requires "significant repetitive use of the hands," and the evidence supports a finding that Plaintiff is unable to use her hands repetitively. (Reply, ECF No. 11, PageID 753.) Plaintiff cites her testimony that she used her fingers "almost constantly working on the computer" in her prior job and that she was no longer able to use her fingers and hands "for long" due to "very limited motor skills and 'numerous days of the week where [she woke up and her arms did not] work.'" (*Id.*)

These arguments are not persuasive. The ALJ asked the vocational expert at the February 2021 hearing whether an individual with the RFC identified in the decision could perform Plaintiff's past relevant work as a project manager. (AR, ECF No. 8-2, PageID 88-89.) The vocational expert testified that such an individual could perform Plaintiff's past relevant work, both as Plaintiff actually performed the job and as the job is generally performed in the national economy as described in the DOT. (*Id.*, PageID 89.) The ALJ relied on this testimony to conclude that Plaintiff was not disabled at Step

Four. (*Id.*, PageID 65.) This testimony constitutes substantial evidence to support the ALJ's determination that Plaintiff could perform past relevant work and is not disabled.

Further, even accepting Plaintiff's testimony that she used her hands "almost constantly" when she worked as a project manager, the ALJ's Step Four finding remains supported by substantial evidence. Social Security Ruling 82-61 guides the ALJ's Step Four determination and provides that a claimant is "not disabled" if she retains the RFC to perform past relevant work: 1) as the claimant actually performed it; or 2) as it is generally performed in the national economy. SSR 82-61, 1982 WL 31387, at *2 (1982); *see also Garcia v. Sec'y of Health & Hum. Servs.,* 46 F.3d 552, 557 (6th Cir. 1995).

The vocational expert classified Plaintiff's past relevant work as a project manager under DOT code 189.117-030. (AR, ECF No. 8-2, PageID 88.) According to the DOT, the project manager job as it is typically performed requires only occasional reaching, handling, fingering, and feeling bilaterally. DICOT 189.117-030, 1991 WL 671489 (Fourth Edition, Revised 1991). Therefore, even if Plaintiff used her hands constantly when she performed the job, the RFC limitation for frequent use of the bilateral upper extremities would only preclude past relevant work as Plaintiff actually performed it. Plaintiff could still perform the project manager job as it is generally performed in the national economy—and that is sufficient to support the ALJ's decision. For all these reasons, the ALJ's Step Four finding is supported by substantial evidence.

### C.    Although The ALJ Misapplied The Medical-Vocational Guidelines At Step Five, The Error Is Harmless

Plaintiff asserts that the ALJ reversibly erred because he mistakenly applied Medical-Vocational Rule 202.14 to find that Plaintiff was "not disabled" at Step 5. (SE, ECF No. 9, PageID 726.) The Court agrees that the ALJ misapplied the Medical-Vocational Guidelines at Step 5, but concludes that the error was harmless.

The Medical-Vocational Guidelines, also known as the Grid Rules, apply at the final step of the sequential disability analysis. *See* 20 C.F.R. § 404.1569. When the findings of fact as to each relevant component of the Grid Rules "coincide with all of the criteria of a particular rule," the rule directs a conclusion about whether the claimant is disabled. 20 C.F.R. Subpt. P, App. 2, § 200.00; *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 528 (6th Cir. 1981).

Plaintiff correctly asserts that the ALJ erred by finding that Plaintiff was an "individual closely approaching advanced age" on the date last insured ("DLI"). (AR, ECF No. 8-2, PageID 65.) Plaintiff was fifty years old on the alleged disability onset date, and so was a "person closely approaching advanced age" at that time. *See* 20 C.F.R. § 404.1563(d). When Plaintiff turned fifty-five in December 2019,[5] she changed age categories to a "person of advanced age." *See* 20 C.F.R. § 404.1563(e). Therefore, when the ALJ considered Plaintiff's education, work experience, RFC, and age categories, he should have applied Medical-Vocational Rules 202.14 *and* 202.06. Specifically, Medical-

---

[5] Pursuant to Social Security regulations, an individual attains a given age on the first moment of the day preceding the anniversary of her birth (20 C.F.R. § 404.2(c)(4)).  Thus, for the purposes of the ALJ's analysis, Plaintiff turned age 55 in December 2019.

Vocational Rule 202.14 should have applied to the time period prior to the DLI and directed a finding of "not disabled," but Medical-Vocational Rule 202.06 should have applied beginning in December 2019 and directed a finding of "disabled." 20 C.F.R. Part 404, Subpt. P, App. 2, § 202.00.

Nevertheless, the ALJ's error in choosing the appropriate Medical-Vocational Rules is harmless because he was not required to proceed to Step 5. Courts generally will excuse an ALJ's procedural violation as harmless error unless it prejudices the claimant on the merits or deprives him of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2007) (citing *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)). A court's ability to excuse a procedural error depends upon the nature of the regulation and the importance of its procedural safeguard. *Id*.

Here, the ALJ's RFC and Step Four findings were supported by substantial evidence. Because the ALJ properly found that Plaintiff was not disabled at Step Four, the ALJ was not required to proceed to Step Five of the sequential evaluation process. *See* 20 C.F.R. § 404.1560(b)(3) ("If we find that you have the [RFC] to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will *not* consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy."). Because the ALJ's erroneous Step Five finding would not change the conclusion that Plaintiff was not disabled at Step Four, this error is harmless. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir. 2004) ("We are not required to remand where to do so would be an idle and useless formality") (citation omitted);

23

*Marilyn S. v. Comm'r of Soc. Sec.,* No. 2:21-CV-3598, 2022 WL 472440, at *13 (S.D. Ohio Feb. 16, 2022) (Jolson, M.J.) (". . . the ALJ decided this case at step four so any step five error is harmless") (citations omitted).

## VI. CONCLUSION

In sum, the ALJ's RFC—specifically, the limitation to frequent use of the bilateral upper extremities—is supported by substantial evidence. So too is the ALJ's Step Four finding. The ALJ's error at Step Five is harmless. Therefore, the Court must affirm the Commissioner's decision.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (ECF No. 9) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

24